# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

  *Plaintiff,*

  v.

JOSE DAVILA,

  *Defendant*.

No. 3:16-cr-00185 (MPS)

## RULING ON MOTION FOR COMPASSIONATE RELEASE

Defendant Jose Davila is serving a sentence of imprisonment at Cumberland Federal Correctional Institution in Maryland and has filed a motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment due to the health risk posed by the COVID-19 virus.  ECF Nos. 54, 55.  The Government filed a memorandum opposing Davila's motion.  ECF No. 57.  I have carefully considered these materials and the supporting exhibits attached thereto.  For the reasons that follow, Davila's motion is denied.

On October 13, 2016, a grand jury returned a four-count indictment charging Davila with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i) (Count 1), unlawful possession of firearm by a felon, in violation of 18 U.S.C. §§ 922 (g)(1) and 924(a)(2) (Count 2), possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B) (Count 3), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) (Count 4).  ECF No. 1.  On March 1, 2017, he pled guilty to count one of the indictment.  ECF Nos. 19, 20.  On October 30, 2017, I sentenced the defendant to 72 months' imprisonment, with credit for time served, and 4 years' supervised release.  ECF Nos. 42, 43.  Davila has been in custody since May 23, 2016 and has

served approximately 53.5 months of his sentence.  ECF No. 28 at 1; ECF No. 43 at 1.  His

projected date of release is July 29, 2021.[1]

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

[T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  Under this section, as modified by the First Step Act of 2018, Pub. L.

No. 115-391, 132 Stat. 5239, I am free "to consider the full slate of extraordinary and compelling

reasons that an imprisoned person might bring before [the court] in motions for compassionate

release." *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25,

2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline

§ 1B1.13, limits the district court's discretion.").  As a result, because Davila – and not the Bureau

of Prisons ("BOP") – brings the instant motion, I am not bound by the Sentencing Commission's

outdated policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, which the

Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP.

---

[1] Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited November 2, 2020).  In his motion for sentence reduction, defendant asserts, without citing to any affidavit, document, government website, or other evidence, that his projected date of release is January 6, 2021.  *See, e.g.*, ECF No. 54 at 1.  Even assuming defendant qualifies for the full amount of good-time credit (54 days for each year of the sentence imposed, *see* 18 U.S.C. § 3624(b)) – and it is not clear from the filings, which do not include defendant's disciplinary history, that he is, in fact, so qualified – Davila would qualify for a maximum of 324 days of good-time credit (54 days multiplied by the six-year sentence imposed).  If Davila were to serve the full 72-month sentence, his date of release would be May 22, 2022.  Three-hundred and twenty-four days prior to May 22, 2022 is July 2, 2021 – nearly six months later than defendant suggests in his brief.  As a result, I find that – based on Davila's projected date of release listed on the BOP's website, July 29, 2021 – Davila has served approximately 87 percent of his sentence, and not 93 percent as he suggests in his brief.

*Brooker*, 2020 WL 5739712, at *1, 6 ("hold[ing] that Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act . . ."; rather, this Guideline "only [applies] to those motions that the BOP has made" under this Act). However, "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Brooker*, 2020 WL 5739712, at *8 (citing 28 U.S.C. § 994(t)) (emphasis in original).

Therefore, I may reduce Davila's term of imprisonment, after considering the Section 3553(a) factors, if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

As the Government acknowledges, ECF No. 57 at 6-7, Davila has met the exhaustion requirement because he filed a request for compassionate release with the Bureau of Prisons on June 29, 2020, ECF No. 54-2 at 1-2, and the Warden denied that request on July 16, 2020, *id.* at 3. As to the merits of Davila's motion, I find that, when all of the circumstances including the Section 3553(a) factors are considered, he has not shown that there exist "extraordinary and compelling reasons" to warrant a reduction of his term of imprisonment.

Davila argues that he is at high risk for serious illness or death from COVID-19 because of obesity and hyperthyroidism. ECF No. 54 at 1. Davila is currently 36 years old, *id.* at 2; ECF No. 54-1 at 1, so his age alone does not place him at increased risk of a severe illness under the guidelines developed by the Centers for Disease Control and Prevention ("CDC").[2]  As the Government concedes, ECF No. 57 at 8, Davila's obesity places him at increased risk of severe

---

[2] According to the Centers for Disease Control and Prevention ("CDC"), "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." Centers for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited November 3, 2020). Age-related risk increases on a sliding scale, and the "greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

illness from COVID-19 under the CDC guidelines.  As of March 2020, Davila weighed 231 lbs
(ECF No. 54-1 at 1) which, at 5'10" (ECF No. 54 at 3), yields a BMI of 33.1.[3]  According to the
Centers for Disease Control and Prevention ("CDC"), "[p]eople of any age with certain underlying
medical conditions are at increased risk for severe illness from COVID-19."[4]  Obesity, defined as
a BMI of 30 or greater, is one of these underlying medical conditions.[5]  Davila also argues that
hyperthyroidism increases his risk of severe illness from COVID-19, though he does not point to
any evidence supporting this assertion.  Indeed, hyperthyroidism does not appear to be among the
conditions that the CDC lists that do, or may, increase such risk.[6]  As a result, Davila's
hyperthyroidism does not appear to increase his risk of severe illness from COVID-19 under the
CDC guidelines, but, based on my discussion of the Section 3553(a) factors below, I would reach
the same result even if it did.

While Davila faces an increased risk from COVID-19 under the CDC guidelines due to his
obesity, I find that this condition is insufficient to warrant a reduction in his term of imprisonment
when the factors in 18 U.S.C. § 3553(a) are taken into account, as they must be under Section
3582(c)(1)(A).  And although Davila argues that the general danger posed by COVID-19 supports

---

[3] Centers for Disease Control and Prevention, *Adult BMI Calculator*,
https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last
visited November 3, 2020).
[4] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*,
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last
visited November 3, 2020).
[5] *Id.*
[6] *Id.* ("Adults of any age with the following conditions are at increased risk of severe illness from the virus that
causes COVID-19: Cancer[;] Chronic kidney disease[;] COPD (chronic obstructive pulmonary disease)[;] Heart
conditions, such as heart failure, coronary artery disease, or cardiomyopathies[;] Immunocompromised state
(weakened immune system) from solid organ transplant[;] Obesity (body mass index [BMI] of 30 kg/m2 or higher
but < 40 kg/m2)[;] Severe Obesity (BMI ≥ 40 kg/m2)[;] Pregnancy[;] Sickle cell disease[;] Smoking[;] Type 2
diabetes mellitus[. . . .]  [A]dults of any age with the following conditions might be at an increased risk for severe
illness from the virus that causes COVID-19: Asthma (moderate-to-severe)[;] Cerebrovascular disease (affects blood
vessels and blood supply to the brain)[;] Cystic fibrosis[;] Hypertension or high blood pressure[;]
Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune
deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines[;] Neurologic conditions,
such as dementia[;] Liver disease[;] Overweight (BMI > 25 kg/m2, but < 30 kg/m2)[;] Pulmonary fibrosis (having
damaged or scarred lung tissues)[;] Thalassemia (a type of blood disorder)[;] Type 1 diabetes mellitus[.]").

his motion, he has not demonstrated that there is any elevated risk of exposure at FCI Cumberland compared with other prison facilities. ECF No. 54 at 2-3, 6-8. Indeed, according to the BOP, and as both Davila (ECF No. 54 at 2) and the Government (ECF No. 57 at 9) acknowledge, FCI Cumberland has reported that there are currently no active COVID-19 infections among inmates and only 1 active infection among staff; further, unlike several BOP facilities that previously were reporting large numbers of infections but now are reporting few or none, FCI Cumberland has previously reported only 7 infected inmates and 6 infected staff members during the entire period of the pandemic.[7] In any event, here, the Section 3553(a) factors—especially the need to reflect the seriousness of the offense and the need to protect the public—weigh heavily against the requested reduction in his term of imprisonment.

Davila has a substantial criminal record, including a prior drug offense (when Davila was 22 years' old), two convictions for threatening (at ages 20 and 28), and one for risk of injury to a minor (at age 24), ECF No. 28 ¶¶ 32-35—the latter three of which suggest that Davila has threatened violence or is otherwise a danger to the public. Davila also committed some of these offenses while on probation. *Id.* In addition, Davila's drug offense in this case, committed when he was 31 years' old, involved a gun—specifically, a "Hi-Point .380 caliber pistol with the serial number filed off/obliterated and 80 rounds of ammunition . . . ." ECF No. 28 ¶¶ 9-13. In short, Davila has a lengthy criminal history that began at the age of 20, continued through his early thirties (when he committed the offense for which he is currently incarcerated), and includes violent crimes and offenses committed while on probation. *Id.* ¶¶ 32-35. Further, as noted above, he has not served as much of his sentence as defense counsel asserts. As a result, after considering the facts here in light of the 3553(a) factors, I cannot find that the requested reduction in Davila's

---

[7] Federal Bureau of Prisons, *COVID-19 Update*, https://www.bop.gov/coronavirus/index.jsp (last visited November 4, 2020).

term of imprisonment is warranted.  The seriousness of the offense in this case, Davila's substantial and serious criminal history, and his demonstrated recidivism lead me to conclude that further prison time is necessary to reflect the seriousness of his offense and to protect the public, in spite of his increased vulnerability to COVID-19.

I do not take lightly the danger that COVID-19 poses to inmates—and especially those that are medically vulnerable.  And although Davila has demonstrated he faces an increased risk of severe illness from COVID-19 based on his obesity, I find that, when the Section 3553(a) factors—and especially his substantial and violent criminal history—are accounted for in this case, the risk to Davila's health posed by COVID-19 does not warrant ending his term of imprisonment.  I therefore must deny this motion.

For the foregoing reasons, Davila's motion to reduce sentence (ECF Nos. 54, 55) is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              November 5, 2020